AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
District of New Mexico

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>13 Carmel Road, Los Lunas, New Mexico 87031 | ) ) ) ) ) ) Case No. 16-MR-48 |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Attachment I

located in the _____ District of _____New Mexico_____, there is now concealed *(identify the person or describe the property to be seized)*:

Attachment II

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. 841(a)(1) | Distribution of a controlled substance |
| Title 21 U.S.C. 846 | Conspiracy |

The application is based on these facts:
Attached Affidavit of Special Agent Erin Croft

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Erin Croft, Special Agent
_____
Printed name and title

Sworn to before me and signed in my presence.

Date: January 20, 2016

_____
Judge's signature

City and state: Albuquerque, New Mexico

Karen B. Molzen, U.S. Chief Magistrate Judge
_____
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION<br>FOR AN ORDER AUTHORIZING THE<br>SEARCH OF 13 CARMEL ROAD,<br>LOS LUNAS, NEW MEXICO | Magistrate No.<br><br>Under Seal |

AFFIDAVIT IN SUPPORT OF APPLICATION

I, Special Agent (SA) Erin Croft, of the Drug Enforcement Administration (DEA), United States Department of Justice, being first duly sworn, hereby state as follows:

**Introduction**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the premises known as 13 Carmel Road, Los Lunas, Valencia County, New Mexico, hereafter "PREMISES," further described in Attachment I, for the things described in Attachment II.

2. I am currently investigating the methamphetamine and heroin trafficking activities of Joseph BALDONADO. There is probable cause to believe that at the listed location there will be found evidence of violations of Title 21, United States Code, Sections 841(a)(1) and 846. The statements contained in this Affidavit are based upon my personal knowledge, as well as information provided to me by Task Force Officer (TFO) Lawrence Montano, as well as other agents and officers (hereafter referred to as agents). Because this Affidavit is written for the limited purpose of setting forth probable cause for the requested search warrant, I have not included every fact known to me through this investigation. I have set forth those facts I deem necessary to establish

probable cause that evidence, fruits, or instrumentalities of the narcotics offenses will be found at the location to be searched.

### Affiant's Background

3. I am an "investigative or law enforcement officer" of the United States within the meaning of Title 18 U.S.C § 2510(7), in that I am an officer of the United States empowered by law to conduct criminal investigations and make arrests for offenses enumerated in Title 18 U.S.C. § 2516.  I have been employed by the DEA since January 2004.  I am empowered to investigate, to make arrests with or without a warrant and to execute search warrants under the authority of Title 21 U.S.C. § 878.  During this time I accumulated the following training and experience:

(a)  I graduated from the DEA Academy located at the FBI Academy, Quantico, Virginia.  I received approximately 500 hours of specialized narcotics related training.  The training included controlled substances identification, narcotics related investigative techniques, interview and interrogation training, preparation of search warrants, tactical application of narcotics enforcement, surveillance and electronic monitoring techniques, money laundering investigations and various forensic subjects including latent fingerprint collection and analysis.

(b)  As a DEA agent I have directed and participated in investigations targeting individuals and organizations trafficking cocaine, cocaine base ("crack"), marijuana, methamphetamine, heroin, and other controlled substances, as defined in Title 21 Unites States Code, Section 801.  During these investigations I have written numerous Probable Cause Affidavits, Title III Affidavits, and Search Warrants.

## Relevant Facts

4. Beginning in March 2015, I received information from a Region I Narcotic Task Force Confidential Source (CS-1) regarding the drug trafficking of Joseph BALDONADO.  CS-1 stated one of the main heroin distributors CS-1 knows in the Los Lunas, New Mexico area is a Hispanic male CS-1 knows by the moniker "HAPPY."  CS-1 stated "HAPPY" lives in a trailer located on a dirt road off Monterey Road in Los Lunas, New Mexico and that the trailer has visible surveillance cameras.  CS-1 stated "HAPPY" drives a white SUV and a black truck.  CS-1 stated CS-1 had purchased up to an ounce of heroin from "HAPPY" and that CS-1 paid $600 for the ounce.  CS-1 stated CS-1 had last purchased that amount from "HAPPY" in January 2015.  CS-1 stated "HAPPY" is always armed and usually meets people at two locations besides his residence.  CS-1 stated "HAPPY" meets people at his sister's residence, which is a trailer located in the trailer park across from JJ's on North El Cerro Loop.  CS-1 stated "HAPPY" also meets people at an unknown male's residence located off of Highway 47.

5. On March 3, 2015, TFO Montano and I drove by the PREMISES with CS-1. CS-1 identified the PREMISES as the residence of "HAPPY."  TFO Montano and I observed a black truck backed into the driveway of the residence and a white Cadillac Escalade bearing an unknown UNM New Mexico license plate also parked in the driveway.  I ran an open source database inquiry for the PREMISES and located a resident of Joseph BALDONADO.  I observed BALDONADO had a white Cadillac Escalade registered to him at the PREMISES with New Mexico license plate 04750UNM and a black GMC truck also registered to him at the PREMISES with New Mexico license plate 05714UNM.

3

6. In September 2015, I received information from a second Region I Narcotic Task Force Confidential Source (CS-2) regarding "HAPPY." CS-2 stated CS-2 knows a Hispanic male who goes by the moniker "HAPPY" and distributes multiple drugs to include methamphetamine and heroin. CS-2 stated CS-2 had talked to "HAPPY" about purchasing an ounce of methamphetamine and "HAPPY" told the CS that an ounce would be $800. CS-2 stated CS-2 has seen "HAPPY" with a box containing heroin, methamphetamine and cocaine and that CS-2 has also seen "HAPPY" with a handgun during a drug transaction. TFO Montano showed CS-2 a driver's license photograph of Joseph BALDONADO and CS-2 identified BALDONADO as "HAPPY." CS-2 also provided telephone number 505-328-8132 as BALDONADO's phone number. I subpoenaed Verizon Wireless, the service provider for the phone, and observed the phone was a prepaid cellular phone with no listed subscriber information.

7. On January 12, 2016, at approximately 1:51 PM, an undercover officer (UC) made contact with BALDONADO at telephone number 505-328-8132. The UC asked BALDONADO if he had any "work" referring to methamphetamine and BALDONADO told the UC that he had plenty of work. The UC confirmed with BALDONADO that the UC wanted to obtain two ounces of methamphetamine and BALDONADO told the UC that BALDONADO would contact the UC once he obtained the methamphetamine from his associate.

8. At approximately 4:31 PM, the UC received a call from BALDONADO. The UC told BALDONADO that the UC was ready to meet BALDONADO. BALDONADO told the UC to meet him at the Hip Hop Shop located at 3419 Highway 47, Los Lunas,

New Mexico. The UC told BALDONADO that the UC would contact him once he arrived at the Hip Hop Shop.

9. At approximately 5:09 PM, the UC contacted BALDONADO and told him that the UC was at the Hip Hop Shop. BALDONADO told the UC to come meet him at a residence and directed the UC to a residence located at 19 Vegas Road, Los Lunas, New Mexico.

10. At approximately 5:15 PM, the UC received a call from BALDONADO further directing the UC to the residence located at 19 Vegas Road, Los Lunas, New Mexico. As the UC arrived at the residence, the UC observed BALDONADO was the sole occupant of his black truck, bearing New Mexico license plate 05714UNM, which was backed into the residence located at 19 Vegas Road, Los Lunas, New Mexico. The UC met with BALDONADO through the driver's side window of his truck and handed BALDONADO $1600 U.S. Currency. BALDONADO took the money from the UC and removed the rubber band and commented to the UC that all the bills were fifties. The UC observed while BALDNOADO was looking at the money that BALDONADO was using a police scanner that was lying on the dash of the truck. BALDONADO handed the UC two clear plastic bags containing a white crystalline substance. The UC took possession of the two bags and went back to the UC vehicle and departed the residence at approximately 5:18 PM. The UC described the residence located at 19 Vegas Road, Los Lunas, New Mexico as a residence that appeared to be being torn down. I subsequently weighed the two clear plastic bags which weighed approximately 58.8 grams in the original packaging. I also performed a field test of the white crystalline substance in each bag and obtained a positive result for the presence of methamphetamine.

11. At approximately 5:19 PM, agents observed BALDONADO's truck exit the residence located at 19 Vegas Road, Los Lunas, New Mexico. Agents observed BALDONADO's truck drive in a loop around the shopping center that contains the Big 5 store located at 2359 Main Street SE, Los Lunas, New Mexico and then drive back by the residence located at 19 Vegas Road, Los Lunas, New Mexico but continue past the residence.

12. At approximately 5:38 PM, agents observed BALDONADO's truck arrive at the PREMISES. Agents observed the gate to the residence was opened and BALDONADO drove his truck onto the property and parked his truck at the residence.

13. On January 19, 2016, at approximately 11:20 AM, TFO Montano and I drove by the PREMISES and observed the GMC truck bearing New Mexico license plate 05714UNM and the white Cadillac Escalade bearing New Mexico license plate 04750UNM parked in the driveway of the residence. Both vehicles are registered to BALDONADO at the PREMISES.

14. Based on my training and experience, and conversations with other Officers and Agents, I know the following regarding those involved in the trafficking of controlled substances:

(a) Conspirators in drug trafficking frequently keep records of their transactions, similar to those kept by legitimate business persons engaged in the sale of goods. These conspirators maintain and tend to retain accounts of records of drug transactions. Such records typically detail the amounts of controlled substances or cash outstanding, funds which are owed or expended, along with records tending to indicate and identify co-conspirators. Such records may include customer lists, price lists, notes of telephone

messages, financial journals, bank account books, notes of money owed, and records of past purchases of drugs. Typically, because of their importance, these records are maintained by traffickers on their person and/or at their residences, "safe" or "stash" houses, storage lockers, vehicles or facilities and businesses owned and operated by traffickers. These records are stored either electronically in computers on hardware or software, or on paper. These documents tend to be kept by traffickers for an extended period of time.

(b) Narcotics traffickers often possess handguns, shotguns, rifles and other firearms and ammunition which may be used to facilitate the distribution or possession of the illicit substance. Narcotics traffickers also retain documents which indicate possession, ownership, and acquisition of these weapons.

(c) Drug traffickers often use telephones, cellular telephones and pagers to facilitate their sales and to avoid police detection. Drug dealing is an ongoing practice, so customers may call, page or text the drug dealer attempting to place orders at any time. Drug dealers also use answering machines and/or voicemail to receive messages from customers.

(d) People in general receive correspondence at their residences such as phone bills, utility bills, rental agreements, canceled mail and personal letters. These items, as well as items such as photographs, keys, and personal identification documents, tend to establish the identity of the person(s) having dominion and control over the residence and, as such, over any illicit drug related items found therein.

(e) Drug dealers commonly have large sums of money from their drug sale profits. Larger sums of cash are often kept in locked or secure containers.

(f) In order to access computer hardware, software, or data devices which may contain evidence of illegal activity as stated above, passwords may be used. Evidence of such passwords or documentation can be kept at the residence of conspirators in trafficking narcotics.

## CONCLUSION

15. Based upon the facts set forth in this Affidavit, I believe there is probable cause to believe that Joseph BALDONADO is now in possession of records and documents regarding trafficking controlled substances along with the controlled substances themselves; that evidence of these offenses, as further described in Attachment II, will be found at the PREMISES, as fully described in Attachment I to this Affidavit. I respectfully request the issuance of a search warrant, authorizing any agent of the Drug Enforcement Administration, with the assistance of other law enforcement officers, to enter and search the premises of the property described in Attachment I for items more particularly described in Attachment II, all of which are evidence of and fruits and instrumentalities of violations of Title 21, United States Code, Section 841(a)(1), distribution of a controlled substance, namely heroin and methamphetamine, and Section 846, Conspiracy.

16. This Affidavit in support of the requested search warrant was reviewed and approved by Assistant United States Attorney Kimberly Brawley.

_____
Erin K. Croft
Special Agent
Drug Enforcement Administration

Sworn and subscribed to before me this 20th day of January, 2016.

_____
Karen B. Molzen
United States Chief Magistrate Judge

# ATTACHMENT I

### Location(s) To Be Searched

The attached search warrant authorizes the search of the residence, all attached and unattached storage areas and mailboxes located on the premises and all vehicles and persons located on the premises described below in or on which the items to be seized could be concealed.

1. **Residence of Joseph BALDONADO located at 13 Carmel Road, Los Lunas, New Mexico.** The Residence is located on the east side of Carmel Road in Los Lunas, New Mexico. The building is described as having unfinished outer walls with "Tyvek" building material still visible and a metal pitched roof. The property is surrounded by a white metal fence with a chain link fence at the front. There is a black mail box located at the front of the property with "13" in white numbers on the side.

    A picture of the mail box and front of the residence is attached for further reference.





# ATTACHMENT II

## Items To Be Seized

All items listed below that relate to violations of Title 21, United States Code, Sections 841 and 846 and involve Joseph BALDONADO:

1. Records of Money Laundering and drug records, in particular, ledgers, drug transactions, account books, notes, names and/or code names or nicknames and/or identifying information reflecting customers, amounts of drugs bought and sold, amounts of money paid, owed or collected and all appointment calendars.

2. Large amounts of U.S. currency, financial instruments, precious metals, jewelry and other items of value and/or proceeds of drug transactions.

3. Any and all drug customer lists, suppliers' lists, or any notes containing the individual names of such persons, telephone numbers and/or addresses of these customers or suppliers and any corresponding records of accounts receivable, money paid or received, drugs supplied or received, or cash received to pay for controlled substances or intended to pay for controlled substances.

4. Telephone and address books or notes containing telephone numbers and addresses of Joseph BALDONADO and other identified targets of the investigation.

5. Telephone toll records for homes and/or businesses owned or controlled by Joseph BALDONADO or other telecommunications instruments used by them and/or other identified targets of the investigation.

6. Indications of ownership or control of these premise and/or other premises used in unlawful drug trafficking activity, including but not limited to, utility bills, cancelled checks, or envelopes and deeds or leases.

7. Indications of ownership or control over any vehicles located at the place to be searched, including but not limited to, titles, registration, gas receipts, repair bills and keys belonging to that vehicle.

8. Any and all-paging devices, cellular phones and bills or receipts relating to the leasing/renting of the paging devices and cellular telephones.

9. Records, receipts, bank statements and records, money drafts, letters of credit, money orders and cashier's checks received or sent, passbooks, bank checks, safe deposit box key(s), vault key(s), safes and other items evidencing the obtaining, secreting and/or concealment, and or expenditures of money.

10. Any and all financial or other instruments evidencing placement of assets in the names other than the names of Joseph BALDONADO.

11. Electronically stored data, computerized or written books, records, receipts, diaries, notes, ledgers, airlines tickets, cashier's checks, money orders and other papers relating to the transportation, ordering, sale and distribution of controlled substances and the outstanding debts and collections from controlled substances that have been distributed. The electronically stored data should include electronic records or data being stored at a remote physical location(s) as evidenced by an existing or previously mapped network connection(s) via the internet or other private network(s). Any users, administrators and others routinely involved with creating or altering such records shall disclose any required passwords or encryption keys necessary for the clear-text retrieval and review of these records.

12. Photographs or video movies of Joseph BALDONADO and/or other identified targets of the investigation and the property and assets purchased with drug proceeds.

13. Firearms and ammunition, including but not limited to handguns, rifles, shotguns and automatic weapons.

14. Any controlled substances enumerated in USCS Title 21 § 812 for which possession without proper prescription, registration or authorization is illegal and in violation of § 841, except as authorized by Title 21 USCS.